1  MICHAEL F. WOOD (DCBN 376312)
   RICHARD B. COHEN (CSBN 79601)
2  BRIAN J. STACK (OSBN 0069796)
   JASON M. KATZ (OSBN 0076104)
3  ALBERT SAMBAT (CSBN 236472)
   ANNA TRYON PLETCHER (CSBN 239730)
4  Antitrust Division
   U.S. Department of Justice
5  450 Golden Gate Avenue
   Box 36046, Room 10-0101
6  San Francisco, California 94102
   Telephone (415) 436-6660
7  Attorneys for the United States of America

8              UNITED STATES DISTRICT COURT

9            NORTHERN DISTRICT OF CALIFORNIA

10              SAN FRANCISCO DIVISION

11 | UNITED STATES OF AMERICA,        ) No. CR-05-00208-12 CRB
                                      )
12 |            Plaintiff,            ) UNITED STATES' SENTENCING
                                      ) MEMORANDUM AND MOTION
13 |                                  ) FOR DOWNWARD DEPARTURE
                                      ) RE: DEFENDANT WILLIAM
14 |    v.                            ) HOLMAN
                                      )
15 |                                  ) Hearing Date: April 9, 2008
16 | WILLIAM HOLMAN,                  ) Time:        2:15 p.m.
                                      ) Court:       Hon. Charles R. Breyer
17 |            Defendant.            )
   |_____)

18

19        Defendant William Holman is scheduled to be sentenced before this Court on April 9,

20 2008, after having entered a guilty plea on April 6, 2007.  Mr. Holman pled guilty pursuant to a

21 Rule 11(c)(1)(B) plea agreement to a charge that he conspired to rig bids related to a school

22 project proposed to be funded under the Federal Communications Commission's ("FCC") E-Rate

23 program, in violation of the Sherman Antitrust Act, 15 U.S.C. § 1.  Mr. Holman's co-defendants,

24 with the exception of co-defendant Judy Green, have also pled guilty.  On September 14, 2007, a

25 jury found Ms. Green guilty of the twenty-two counts with which she was charged.  She was

26 sentenced by Judge William Alsup on March 19, 2008.  Co-defendant Earl Nelson was sentenced

27 by this Court on March 19, 2008.  The remaining co-defendants are scheduled to be sentenced

28 before this Court on the same day as Mr. Holman.

**UNITED STATES' SENTENCING MEMORANDUM AND MOTION FOR
DOWNWARD DEPARTURE RE: DEFENDANT WILLIAM HOLMAN**

1        The United States now files this pleading to address the offense conduct and the
2   calculation of the Guidelines, as well as to advise the Court of its sentencing recommendation.
3   Based on Mr. Holman's substantial assistance to the government and based on his history and
4   characteristics, the United States moves for a downward departure, pursuant to U.S.S.G. § 5K1.1
5   and 18 U.S.C. § 3553(a), to offense level 13.

6                               **DISCUSSION**

7   **I.**     **The Offense Conduct**

8        The Probation Officer's Report sets out an accurate summary of the facts of this case.
9   *See* Presentence Investigation Report, ¶¶ 9–20. In a nutshell, this case relates to schemes and
10   conspiracies to defraud the federal E-Rate program, which was created by Congress to provide
11   funding to connect schools and libraries to the Internet. To do so, Ms. Green and her co-
12   conspirators reached a series of agreements to rig bids on numerous projects seeking E-Rate
13   funding located throughout the United States from 1998 through 2004. One of those
14   conspiracies, which was charged in a Substitute Information to which Mr. Holman has pled
15   guilty, focuses on activity relating to the Ceria Travis Academy ("Ceria Travis"), located in
16   Milwaukee, Wisconsin. During that time period, Mr. Holman was Vice President and, later,
17   Senior Vice President for Sales at NEC-BNS, a company that sold and installed data equipment,
18   including computers, computer servers, routers and switches, and telecommunications
19   equipment.

20        In the late fall of 1999, NEC-BNS employees, supervised by Mr. Holman, and Video
21   Network Communications Inc. ("VNCI") representatives reached an understanding related to
22   bidding on certain E-Rate-funded school projects, including the Ceria Travis project. They
23   agreed that VNCI would refrain from bidding against NEC-BNS on those projects and, in return,
24   NEC-BNS would pay VNCI a percentage of the revenue it realized on those projects. In
25   addition, NEC-BNS agreed to include VNCI equipment in its bids and purchase and install VNCI
26   equipment on those projects. Mr. Holman was apprised of the understanding and reviewed and
27   signed a written agreement related to payments to VNCI.

28        After VNCI entered into this agreement, its employees, co-defendants Judy Green and

**UNITED STATES' SENTENCING MEMORANDUM AND MOTION FOR
DOWNWARD DEPARTURE RE: DEFENDANT WILLIAM HOLMAN**

1  George Marchelos, discouraged and disqualified bids from non-conspirators on the projects.

2  Knowing that VNCI would not be bidding against NEC-BNS and that VNCI's employees would

3  be limiting competition for those projects, NEC-BNS employees, acting pursuant to instructions

4  from Mr. Holman, prepared and submitted noncompetitive bids for those projects. As a result,

5  NEC-BNS was awarded those projects, including the Ceria Travis project, paid VNCI its fee, and

6  purchased and installed VNCI equipment.

7      Shortly after Mr. Holman signed the VNCI fee arrangement, he reduced his supervision

8  responsibilities in order to attend to his dying wife. While Mr. Holman may not have known of

9  NEC-BNS's E-Rate activities while he was tending to his wife, once he returned six months

10  later, he was apprised of all major developments on E-Rate, including awareness by his principal

11  assistant that VNCI and NEC-BNS were engaged in fraudulent conduct. As a result, Mr. Holman

12  complained to VNCI executives about the various excesses of VNCI employee Judy Green in

13  securing projects for NEC-BNS and VNCI, arguing that these practices created legal risk and

14  financial hardship. Despite this knowledge, Mr. Holman's subordinates completed the projects

15  already underway and worked to eliminate the problematic behavior of Ms. Green during the

16  next year of E-Rate funding. When VNCI did not curb Ms. Green, Mr. Holman authorized NEC-

17  BNS's withdrawal from the VNCI relationship, but did not disclose the questionable activities to

18  the E-Rate program administrator, the Universal Service Administrative Company.

19  **II.   The Guidelines Calculations**

20      The Probation Office has concluded that Mr. Holman's final offense level is 15 and that

21  his criminal history category is I, which results in a Guidelines range of 18 to 24 months. The

22  United States agrees with these calculations.

23      Based on Mr. Holman's substantial cooperation in the United States' investigation, as

24  well as his history and characteristics, however, the United States respectfully requests that this

25  Court depart below the applicable Guidelines range to offense level 13. The basis of the United

26  States' motion is set out in more detail in Section III, *infra*.

27  **III.   Sentencing Recommendation and Motion for Downward Departure**

28      Under U.S.S.G. § 5K1.1, the Court may depart from the Guidelines based on a

**UNITED STATES' SENTENCING MEMORANDUM AND MOTION FOR
DOWNWARD DEPARTURE RE: DEFENDANT WILLIAM HOLMAN**

-3-

1    defendant's substantial assistance, and may consider the following reasons when determining the

2    appropriate amount of the reduction:

3           A.      the court's evaluation of the significance and usefulness of the defendant's
                    assistance, taking into consideration the government's evaluation of the
4                   assistance rendered;

5           B.      the truthfulness, completeness, and reliability of any information or
                    testimony provided by the defendant;
6
            C.      the nature and extent of the defendant's assistance;
7
            D.      any injury suffered, or any danger or risk of injury to the defendant or his
8                   family resulting from his assistance; and

9           E.      the timeliness of the defendant's assistance.

10   U.S.S.G. § 5K1.1.  Further, this Court should consider the factors set out in 18 U.S.C. § 3553(a)

11   in determining an appropriate sentence, including the nature and characteristics of the defendant.

12          Here, Mr. Holman provided the government with significant information and assistance

13   regarding this investigation.  Although ultimately not called to testify at trial (where the number

14   of prospective witnesses totaled over 40 and 25 actually testified), Mr. Holman provided details

15   about the relevant events, gave context and foundation for relevant documents, and was available

16   and willing to testify at trial, had the government called him.  When viewed with other

17   information the government possessed, Mr. Holman's information proved to be accurate and

18   reliable.  Throughout his cooperation, he provided truthful, candid, and complete information

19   regarding his role in the conspiracy, as well as the roles of the other defendants.  Mr. Holman's

20   cooperation, in addition to being extensive and truthful, was timely.  The parties agreed in

21   principle to the terms of a plea agreement long before the eve of trial.

22          Mr. Holman is also recommended for departure based on the fact that many of the most

23   egregious aspects of these activities occurred while he was not at NEC-BNS.  His subordinates

24   carried out the schemes without the normal close supervision Mr. Holman would have

25   undertaken had he not been preoccupied with his wife's illness.  It should also be pointed out that

26   when he returned to active supervision, he took steps to separate NEC-BNS from the

27   impermissible conduct still being carried on by NEC-BNS' co-conspirators for future E-Rate

28   years.  However, he allowed NEC-BNS to reap the rewards of that conduct and took no steps to

**UNITED STATES' SENTENCING MEMORANDUM AND MOTION FOR
DOWNWARD DEPARTURE RE: DEFENDANT WILLIAM HOLMAN**

1   notify the appropriate E-Rate program authorities of that conduct for the E-Rate funding year
2   2000/2001 projects. Since his principal liability is based on his failure to notify those authorities
3   and not on his participation in any impermissible activities, a departure to a level 13 is
4   respectfully requested.

5       With respect to the history and characteristics of this defendant, the United States notes
6   that, before being associated with co-defendant Judy Green, Mr. Holman had worked in the
7   technology-related industry for years and had no prior history of questionable conduct. The
8   United States believes that these circumstances also militate for a sentence below the applicable
9   Guidelines range and constitute additional support for the requested departure to offense level 13.

10      For all of these reasons, although Mr. Holman's actions were serious, the United States
11  believes that, taking into account the factors set out in U.S.S.G. § 5K1.1 and 18 U.S.C.
12  § 3553(a), Holman's assistance has been substantial and supports a sentence below the applicable
13  Guidelines range. The United States, accordingly, asks the Court to depart downward to offense
14  level 13. This sentence level appropriately punishes Mr. Holman for his crime and rewards him
15  for his cooperation. The United States also requests that the Court also impose a $100 special
16  assessment.

17  **IV.    Restitution and Forfeiture**

18      The victims are the entities that controlled the E-Rate funds: the Federal Communications
19  Commission and the Universal Services Administrative Company. A civil *qui tam* action
20  produced settlements with various involved companies, including NEC-BNS, which resulted in
21  substantial civil penalties. Because that action provided for a recovery more than actual civil
22  damages, the victims' rights have been addressed.

23      With respect to the issue of forfeiture, no action is necessary.

24  //
25  //
26  //
27  //
28  //

**UNITED STATES' SENTENCING MEMORANDUM AND MOTION FOR
DOWNWARD DEPARTURE RE: DEFENDANT WILLIAM HOLMAN**

-5-

## CONCLUSION

Based on the defendant William Holman's cooperation with and substantial assistance to the government, his history and characteristics, and based on all of the facts of this case, the United States moves for a downward departure to level 13. The Court should also impose a special assessment of $100.

DATED: March 27, 2008

/s/Richard B. Cohen
MICHAEL F. WOOD
RICHARD B. COHEN
BRIAN J. STACK
JASON M. KATZ
ALBERT B. SAMBAT
ANNA TRYON PLETCHER
Trial Attorneys
Antitrust Division
United States Department of Justice

**UNITED STATES' SENTENCING MEMORANDUM AND MOTION FOR DOWNWARD DEPARTURE RE: DEFENDANT WILLIAM HOLMAN**

-6-